HOLLAND & KNIGHT LLP
Ashley L. Shively (SBN 264912)
560 Mission Street, Suite 1900
San Francisco, CA 94105
Tel.: 415.743.6900
Fax: 415.743.6910
Email: ashley.shively@hkław.com

Mark S. Melodia (*pro hac vice* forthcoming)
Qian (Sheila) Shen (SBN 332048)
787 Seventh Avenue, Suite 3100
New York, NY 10019
Tel.: 212.513.3200
Fax: 212.385.9010
Email: mark.melodia@hklaw.com
qian.shen@hklaw.com

*Attorneys for Defendant Wunderkind Corporation*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DANIEL WINE, ALLISON BLANK, SANDRA SION, and KEVIN SMITH, individually and on behalf of all others similarly situated;<br><br>*Plaintiffs*,<br><br>vs.<br><br>WUNDERKIND CORP., a Delaware corporation;<br><br>*Defendant*. | Case No.: 3:25-cv-10079<br><br>**NOTICE OF REMOVAL**<br><br>[Removed from the Superior Court of California, County of Alameda, Case No. 25CV145737]<br><br>[28 U.S.C. §§ 1332, 1441, 1446, and 1453] |



Holland & Knight LLP
560 Mission Street, Suite 1900
San Francisco, CA 94105
Tel: 415.743.6900
Fax: 415.743.6910

Holland & Knight LLP
560 Mission Street, Suite 1900
San Francisco, CA 94105
Tel: 415.743.6900
Fax: 415.743.6910

**TO THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA, AND TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that pursuant to 28 U.S.C. §§ 1332(d), 1441, and 1446, and 1453 Defendant Wunderkind Corporation ("Wunderkind") hereby removes the state court civil action captioned *Daniel Wine et al. individually and on behalf of all others similarly situated v. Wunderkind Corp.,* Case No. 25CV145737, from the Superior Court of the State of California, County of Alameda (the "State Court Action"), to the United States District Court for the Northern District of California. This Court has original subject matter jurisdiction under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. §§ 1332(d) and 1453, because minimum diversity exists and the amount in controversy exceeds $5 million. Removal is warranted based on the following:

## I. BACKGROUND

1. On September 29, 2025, Plaintiffs Daniel Wine, Allison Bank, Sandra Sion, and Kevin Smith ("Plaintiffs") filed an unverified Complaint in the Superior Court of the State of California, in and for the County of Alameda (the "State Court Action"). The Complaint alleges causes of action for violations of the California Invasion of Privacy Act [Cal. Penal Code §§ 631(a) and 638.51] ("CIPA"), Comprehensive Computer Data Access and Fraud Act [Cal. Penal Code § 502], California Constitution Article 1 § 1, California Unfair Competition Law [Cal. Bus. & Prof. Code § 17200, *et seq*.] ("UCL"), and common law invasion of privacy. The Complaint alleges that Wunderkind purportedly intercepted and transmitted users personally identifiable information to third-party data companies without the users' consent, caused the unauthorized disclosure of private information, violated the right to privacy, and caused potential exposure to targeted advertising or other unwanted consequences.

2. On October 1, 2025 the State Court issued a minute order setting a Complex Determination Hearing on October 30, 2025.

3. On September 29, 2025, the State Court issued a Notice of Case Management Conference, scheduling the initial case management conference in this matter for February 23, 2026.

4. Prior to the filing of this Complaint, two separate putative class actions alleging nearly identical facts and claims were filed against Wunderkind in the Southern District of New York—

*Weiler v. Wunderkind Corp.*, Case No. 1:25-cv-05854 (filed July 16, 2025) and *Balogun v. Wunderkind Corp.*, Case No. 1:25-cv-06113 (filed July 25, 2025). Both of those actions are brought on behalf of nationwide classes including California subclasses. Those actions have been designated related and assigned to the Honorable Katherine Polk Failla, and consolidation is underway. Transfer of this action and consolidation with the *Weiler* and *Balogun* actions is appropriate, as will be set forth in Wunderkind's forthcoming Motion to Transfer.

## II. REMOVAL IS PROPER BECAUSE THE COURT HAS JURISDICTION OVER THE ACTION

5. This action is subject to removal pursuant to 28 U.S.C. § 1441, which permits removal of "any civil action brought in a State court of which the district courts of the United States have original jurisdiction," and the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d), which grants U.S. District Courts original jurisdiction over, and permits removal of, class actions in which: (i) any member of a class of plaintiffs is a citizen of a State different from any defendant (minimal diversity); (ii) the defendant is not a governmental entity; (iii) the proposed class contains at least 100 members; and (iv) the matter in controversy exceeds $5,000,000, exclusive of interest and costs. As set forth below, this action satisfies each of the requirements of § 1332(d)(2) for original jurisdiction under CAFA.

### a. The Complaint is Pled as a Putative Class Action with over 100 Proposed Members.

6. CAFA defines a "class action" as "any civil action filed under Rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by one or more representative persons as a class action." 28 U.S.C. § 1332(d)(1)(B).

7. This action is brought by a putative representative person on behalf of a proposed class of more than a thousand individuals. Compl. ¶ 51 ("Plaintiffs bring this proposed class action pursuant to California Code of Civil Procedure § 382 on behalf of themselves and a Class of others similarly situated . . . ."); *id.* at ¶ 54 ("**Numerosity**: The exact number of Class Members is unknown and not available to Plaintiffs at this time. However, given the scale and scope of Defendant's data collection practices, it is clear that there are hundreds of thousands or millions of California residents who are

Holland & Knight LLP
560 Mission Street, Suite 1900
San Francisco, CA 94105
Tel: 415.743.6900
Fax: 415.743.6910

members of the Class."). Thus, this matter is a "purported class action" as that term is defined pursuant to CAFA, and the number of putative class members exceeds the statutorily required minimum of 100 individuals.

**b. There is Minimal Diversity of Citizenship.**

8. To satisfy CAFA's diversity requirement, the party seeking removal need only show that minimal diversity exists—that there is at least one putative class member who is a citizen of a state different from that of a defendant. 28 U.S.C. § 1332(d)(2)(A); *United Steel, Paper & Forestry, Rubber, Mg., Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO, CLC v. Shell Oil Co.*, 602 F.3d 1087, 1090-91 (9th Cir. 2010) (finding that to achieve its purposes, CAFA provides expanded original diversity jurisdiction for class actions meeting the minimal diversity requirement set forth in 28 U.S.C. § 1332(d)(2)).

9. An "individual is a citizen of the state in which [s]he is domiciled . . ." *Pellegrini v. Fresno Superior Court*, No. 1:15–cv–01564–LJO–EPG, 2015 WL 6167523, at *3 (E.D. Cal. Oct. 20, 2015 (*quoting Boon v. Allstate Ins. Co.,* 229 F. Supp. 2d 1016, 1019 (C.D. Cal. 2002) (*citing Kanter v. Warner-Lambert Co*., 265 F.3d 853, 857 (9th Cir. 2001)). For purposes of diversity citizenship jurisdiction, citizenship is determined by the individual's domicile at the time the lawsuit is filed. 28 U.S.C. § 1332(d)(7); *Armstrong v. Church of Scientology Int'l,* 243 F.3d 546, 546 (9th Cir. 2000) (citing *Lew v. Moss*, 797 F.2d 747, 750 (9th Cir. 1986)). Here, Plaintiffs are each natural persons who are citizens of California. Compl. ¶¶ 7-11 (admitting each named Plaintiff is a natural person and a citizen of California). The putative class is limited to California residents, and therefore only California citizens. *Id.* at ¶ 51 (defining putative class as only California residents).

10. For diversity purposes, a corporation is deemed to be a citizen of any state in which it has been incorporated and of any state where it has its principal place of business. *See* 28 U.S.C. § 1332(d)(10); *see also Breitman v. May Co. California*, 37 F.3d 562, 564 (9th Cir. 1994) ("a corporation is typically a citizen of two states for determining the existence of diversity jurisdiction: the state of incorporation and the state in which it has its principal place of business."). Wunderkind

Holland & Knight LLP
560 Mission Street, Suite 1900
San Francisco, CA 94105
Tel: 415.743.6900
Fax: 415.743.6910

Holland & Knight LLP
560 Mission Street, Suite 1900
San Francisco, CA 94105
Tel: 415.743.6900
Fax: 415.743.6910

is a Delaware corporation with its principal place of business in New York. *Id.* at ¶ 12[1]; *see also* 28 U.S.C. § 1332(c)(1). Thus, minimal diversity exists.

**c. Defendant Wunderkind is Not a Governmental Entity.**

11. Wunderkind is not a State, State official, or other governmental entity.

**d. The Amount in Controversy Exceeds the CAFA Threshold.**

12. Under CAFA, the claims of the individual class members are aggregated to determine if the amount in controversy exceeds the required "sum or value of $5,000,000, exclusive of interest and costs." 28 U.S.C. § 1332(d)(2), (d)(6). "[A] defendant's notice of removal need include only a plausible allegation" that the requirements of CAFA are satisfied. *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014). Evidence establishing the amount in controversy is required only when the plaintiff contests or the court questions a defendant's assertion. *Id.*

13. Wunderkind denies the validity and merit of Plaintiffs' alleged claims and disputes that this action is appropriate for class treatment under Federal Rule of Civil Procedure 23. But for purposes of setting the grounds for this Court's subject matter jurisdiction—and without conceding that Plaintiffs or the putative class are entitled to any damages or any relief whatsoever—it is apparent from the Complaint that Plaintiffs seek sufficient damages on behalf of themselves and the class to satisfy CAFA.

14. CIPA provides statutory damages of up to $5,000 per violation. Cal. Penal Code § 637.2(a). Plaintiffs allege that the putative class consists of "hundreds of thousands or millions of California residents." Compl. ¶ 54. Among other things, Plaintiffs seek "statutory damages in the amount of $5,000 per violation." Compl. ¶ 68, Prayer ¶ (d).

15. With a conservative estimate of 1,001 individuals in Plaintiffs' putative class, the amount in controversy would already exceed CAFA's requirement based just on statutory damages alone (calculated as: 1,001 putative class members x $5,000 per alleged violation = $5,005,000), and independent of any other damages asserted.

---

[1] A statement in a complaint is a judicial admission. *Am. Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir. 1988) ("Judicial admissions are formal admissions in the pleadings which have the effect of withdrawing a fact from issue and dispensing wholly with the need for proof of the fact."). Plaintiffs have alleged that Wunderkind is a citizen of Delaware and of New York, which Wunderkind does not dispute.

Holland & Knight LLP
560 Mission Street, Suite 1900
San Francisco, CA 94105
Tel: 415.743.6900
Fax: 415.743.6910

16. Plaintiffs also request injunctive relief and punitive damages. Compl. ¶¶ 22, 74, Prayer ¶ (d).

17. The cost of compliance by a defendant with an injunction also counts towards CAFA's amount in controversy requirement. *See Int'l Padi, Inc. v. Diverlink*, No. 03-56478, 2005 WL 1635347, at *1 (9th Cir. July 13, 2005) ("in determining the amount in controversy, we may also include the value of the requested injunctive relief to either party.") (*citing Cohn v. Petsmart, Inc.*, 281 F.3d 837, 840 (9th Cir. 2002)). Accepting as true, for purposes of this Notice of Removal only, that Plaintiffs and the putative class are entitled to injunctive relief, the cost of complying with the requested injunctive relief, including a change in Wunderkind's alleged business practices, thus also adds to the amount in controversy.

18. The potential award of punitive damages can be considered in determining whether the minimum amount in controversy under CAFA is met. *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 698 (9th Cir. 2007). Accepting as true, for purposes of this Notice of Removal only, that Plaintiffs and the putative class are entitled to punitive damages, said punitive damages would elevate the amount in controversy even further above the threshold CAFA jurisdictional requirement.

19. Accordingly, without conceding any merit to the Complaint's damages allegations or causes of action, the amount in controversy requirement under CAFA is satisfied.

**e. None of the Exceptions to CAFA Apply.**

20. CAFA provides for limited instances in which a District Court is either required to or has discretion to refuse to exercise its subject matter jurisdiction. *See* 28 U.S.C. § 1332(d)(4); 28 U.S.C. § 1332(d)(3). These exceptions do not apply where, as here, the primary (and sole) defendant is not a citizen of the state in which the action was originally filed. *Id.*

## III. NON-WAIVER OF DEFENSES

21. Nothing in this Notice shall be interpreted as a waiver or relinquishment of Wunderkind's right to assert any defenses or affirmative matters, including, without limitation, a motion to dismiss pursuant to Federal Rule of Civil Procedure 12.

Holland & Knight LLP
560 Mission Street, Suite 1900
San Francisco, CA 94105
Tel: 415.743.6900
Fax: 415.743.6910

## IV. ALL OTHER PROCEDURAL REQUIREMENTS HAVE BEEN MET

22. Plaintiff completed service on Wunderkind on October 22, 2025, when it returned the Notice and Acknowledgment. Therefore, this Notice of Removal is timely in that it was filed within thirty (30) days of the service of the Complaint and less than a year after the commencement of the State Court Action. *See* 28 U.S.C. § 1446(b).

23. This Notice is filed in the proper division because the Court embraces the Superior Court of the State of California, in and for the County of Alameda, where Plaintiffs filed the State Court Action. *See* 28 U.S.C. §§ 1441 and 1446(a).

24. In compliance with 28 U.S.C. § 1446(a), a true and correct copy of all process, pleadings, and orders served upon Wunderkind is attached hereto as **Exhibit 1.**

25. No previous request has been made for the relief requested herein. Pursuant to 28 U.S.C. § 1446(d), a copy of this Notice of Removal is being served on Plaintiffs, and a copy is being filed with the State Court Clerk.

## V. CONCLUSION

**WHEREFORE**, Wunderkind, by counsel, respectfully requests that the above-referenced action, originally filed in the Superior Court of the State of California for the County of Alameda, be removed to this Court pursuant to 28 U.S.C. §§ 1331, 1441 and 1446.

Dated: November 21, 2025

HOLLAND & KNIGHT LLP

By: */s/ Ashley Shively*
Ashley Shively
Mark S. Melodia
Qian (Sheila) Shen

Attorneys for Defendant
Wunderkind Corporation

# Exhibit 1

**MOGIN LAW LLP**
Daniel J. Mogin (SBN No. 95624)
Timothy Z. LaComb (SBN No. 314244)
4225 Executive Square, Suite 600
La Jolla, CA 92037
Telephone: (619) 687-6611
Facsimile: (619) 687-6610
dmogin@moginlawllp.com
tlacomb@moginlawllp.com

**JOSEPH SAVERI LAW FIRM, LLP**
Joseph R. Saveri (SBN 130064)
Cadio Zirpoli (SBN 179108)
Kevin E. Rayhill (SBN 267496)
Holden Benon (SBN 325847)
601 California Street, Suite 1505
San Francisco, CA 94108
Tel.: (415) 500-6800
jsaveri@saverilawfirm.com
czirpoli@saverilawfirm.com
hbenon@saverilawfirm.com
krayhill@saverilawfirm.com

**DON BIVENS PLLC**
Don Bivens (*pro hac vice* forthcoming)
15169 N. Scottsdale Road, Suite 205
Scottsdale, AZ 85254
Telephone: (602) 762-2661
don@donbivens.com

*Counsel for Plaintiffs and the Proposed Class*

**ELECTRONICALLY FILED**
Superior Court of California,
County of Alameda
**09/29/2025 at 12:00:00 AM**
By: Andrel Gospel,
Deputy Clerk

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**
**FOR THE COUNTY OF ALAMEDA**

DANIEL WINE, ALLISON BLANK, SANDRA SION, and KEVIN SMITH, individually and on behalf of all others similarly situated,

*Plaintiffs,*

v.

WUNDERKIND CORP., a Delaware corporation,

*Defendant.*

Case No.: 25CV145737

**CLASS ACTION COMPLAINT FOR:**

**Violation of Cal. Penal Code § 631**
**Violation of Cal. Penal Code § 638.51**
**Violation of Cal. Penal Code § 502**
**Violation of the California Constitution Art. 1, § 1**
**Violation of Cal. Bus. & Prof. Code § 17200, *et seq*.**
**Common Law Invasion of Privacy – Intrusion Upon Seclusion**

**DEMAND FOR JURY TRIAL**

# TABLE OF CONTENTS


NATURE OF THE ACTION ... 1

PARTIES ... 3

JURISDICTION AND VENUE ... 4

COMMON FACTUAL ALLEGATIONS ... 4

A. Background of CIPA ... 4

B. Background of Wunderkind ... 7

C. Wunderkind Uses its Identity Network to Identify and Assign a PrivacyID to Website Visitors ... 8

D. Once Assigned a PrivacyID, Wunderkind Tracks Website Visitors Across Websites and Devices ... 10

E. Wunderkind Intercepted Plaintiffs' and Class Members' Data Without Consent 11

F. Wunderkind Uses Consumer Data for Its Own Purposes ... 12

FACTS SPECIFIC TO PLAINTIFFS ... 12

CLASS ACTION ALLEGATIONS ... 13

FIRST CAUSE OF ACTION ... 15

SECOND CAUSE OF ACTION ... 16

THIRD CAUSE OF ACTION ... 17

FOURTH CAUSE OF ACTION ... 18

FIFTH CAUSE OF ACTION ... 20

SIXTH CAUSE OF ACTION ... 22

PRAYER FOR RELIEF ... 23

JURY DEMAND ... 24

## CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiffs Daniel Wine, Allison Blank, Sandra Sion, and Kevin Smith ("Plaintiffs") bring this Class Action Complaint and Demand for Jury Trial against Defendant Wunderkind, Inc. ("Defendant" or "Wunderkind") for surreptitiously collecting information regarding consumers' web browsing activities and behaviors while using subject websites. Plaintiffs allege as follows upon personal knowledge as to themselves and their own acts and experiences, and, as to all other matters, upon information and belief.

## NATURE OF THE ACTION

1. To ensure its citizens enjoy the constitutionally recognized right to privacy and to protect against the threat to this right posed by new surveillance technology (like online tracking software), the California Legislature enacted the California Invasion of Privacy Act ("CIPA"). CIPA makes it unlawful for a third party (like Defendant Wunderkind) to intercept communications between a website visitor and the website operator without the website visitor's consent. CIPA also makes it unlawful for third parties to record, decode, or capture addressing or signaling information through use of a "pen register" or "trap and trace" device without the website visitor's consent. As discussed in detail below, Wunderkind unambiguously, egregiously, and repeatedly violated these sections of CIPA, as well as other California statutes and common law torts, by intercepting Plaintiffs' and Class members' communications with website operators without consent, using devices to record and capture their addressing and signaling information without consent, using the intercepted data to create substantive consumer profiles for them, and ultimately monetizing the intercepted data.

2. Wunderkind is an online surveillance conglomerate with the explicit goal of knowing "all that is knowable about [website operators'] customers to drive contextual and personalized experiences."[1] Stated in laymen's terms, Wunderkind uses tracking and related technology to intercept as much data as possible about individuals so it can learn about them, predict their consumer behaviors, and target them with directed advertisements. It utilizes several tactics to effectuate that goal – many of them unlawful.

[1] https://www.wunderkind.co/platform/identity/.

3. Even though intercepting data without consent violates several California laws, Wunderkind uses its tracking software to intercept data from more than a billion individuals when they visit any of the thousands of websites on which Wunderkind's software is installed. Wunderkind not only intercepts communications between the individual and the website (e.g., search terms entered into an internal search bar) but also intercepts the individual's "digital body language," which includes things like how a cursor is moving on a webpage or the amount of time a user has been idle on a webpage. Wunderkind feeds this data into its proprietary artificial intelligence ("AI") and machine learning systems to understand the intent of the individual, predict next actions by the individual, and determine the precise moment to target him or her with a specific advertisement, such as when a person is getting ready to leave a website. Put differently, Wunderkind not only intercepts communications between website visitors and website operators but also watches the website visitors while they do it.

4. The scale and scope of Wunderkind's data collection practices are staggering. According to Wunderkind, 25% of combined total digital eCommerce revenue is driven by marketing texts and emails sent by Wunderkind to website visitors they have identified. Wunderkind also boasts that it has created consumer profiles for more than a billion people, recognized more than 9 billion devices, and tracked more than 2 trillion digital events per year.

5. But intercepting the data is only part of the equation. Wunderkind also matches the data to a specific individual to later target them with advertisements. To accomplish this, Wunderkind either intercepts personal information when a user inputs it into a website (e.g., entering a name, email address, or phone number on a web form) or intercepts identifiers that its Identity Network can use to identify otherwise anonymous web traffic. Wunderkind is so effective at identifying anonymous website users that it can also identify when a person is using a new device (and, therefore, connects that device to the individual) or when a person is engaging with a different platform.

6. Once Wunderkind identifies the person behind the communications, it creates a user profile or "PrivacyID" for that person. The PrivacyID is a comprehensive profile that enables Wunderkind to track and assign intercepted data to that user across websites, platforms, and

devices. The PrivacyID does not expire or reset and was designed to evade traditional privacy protections like clearing cookies, operating in incognito modes, and using VPNs. Wunderkind, therefore, secretly and without consent creates an ever-expanding, substantive, and durable consumer profile for individuals that is immune to traditional privacy protections and uses that comprehensive profile to predict future behaviors to perfectly time advertisements.

7. Through these practices, and those discussed below, Wunderkind violated several California laws that protect the privacy interests of its residents, including: Cal. Penal Code §§ 631, 638.51, 502; Article 1, § 1 of the California Constitution; Cal. Bus. & Prof. Code § 17200, *et seq.*; and committed a common law invasion of Plaintiffs' and Class Members' privacy.

**PARTIES**

8. Plaintiff Daniel Wine is a natural person and citizen of California. Mr. Wine was in California when he visited CNN.com. Wunderkind unlawfully tracks and intercepts data from individuals when they use this website. In addition, CNN.com does not obtain consent from or provide notice to website visitors that Wunderkind is tracking them and intercepting their data.

9. Plaintiff Allison Blank is a natural person and citizen of California. Ms. Blank was in California when she visited CNN.com and Imgur.com, two of the many websites through which Wunderkind mines information from site visitors without their consent. Wunderkind unlawfully tracks and intercepts data from individuals when they use these websites. In addition, neither CNN.com nor Imgur.com obtain consent from or provide notice to website visitors that Wunderkind is engaging in its data interception and tracking practices.

10. Plaintiff Sandra Sion is a natural person and citizen of California. Ms. Sion was in California when she visited Legacy.com, one of the many websites through which Wunderkind mines information from site visitors without their consent. Wunderkind unlawfully tracks and intercepts data from individuals when they use this website. In addition, Legacy.com does not obtain consent from or provide notice to website visitors that Wunderkind is engaging in its data interception and tracking practices.

11. Plaintiff Kevin Smith is a natural person and citizen of California. Mr. Smith was in California when he visited CNN.com and Everlane.com, two of the many websites through which

Wunderkind mines information from sites visitors without their consent. Wunderkind unlawfully tracks and intercepts data from individuals when they use these websites. In addition, neither CNN.com nor Everlane.com obtain consent from or provide notice to website visitors that Wunderkind is engaging in its data interception and tracking practices.

12. Defendant Wunderkind, Inc. is a corporation organized and existing under the laws of Delaware with its principal place of business located at 1 World Trade Center, Floor 74, New York, New York 10007.

**JURISDICTION AND VENUE**

13. This Court has jurisdiction pursuant to Article VI, Section 4 of the California Constitution and Code of Civil Procedure Section 410.10.

14. This Court has personal jurisdiction over Defendant because Defendant

15. conducts significant business throughout the State of California. Moreover, Wunderkind is a registered data broker in California, and it has purposefully directed its conduct toward California residents. Through the deployment of its tracking technology on widely accessed websites, Wunderkind caused the unauthorized interception and collection of data from California residents while they were physically located in the state, constituting significant, continuous, and pervasive contacts with the State of California.

16. Venue is proper pursuant to Code of Civil Procedure § 395.5 because the obligation or liability giving rise to this action arose in this county.

**COMMON FACTUAL ALLEGATIONS**

**A. Background of CIPA**

17. The California Legislature enacted CIPA to protect the privacy rights of California citizens. In doing so, the California Legislature expressly recognized that "the development of new devices and techniques for the purpose of eavesdropping upon private communications … has created a serious threat to the free exercise of personal liberties and cannot be tolerated in a free and civilized society.

18. Section 631(a) of CIPA prohibits any of the following, "by means of any machine, instrument, contrivance, or in any other manner":

> Intentionally tap[ping], or mak[ing] any unauthorized connection, whether physically, electrically, acoustically, inductively or otherwise, with any telegraph or telephone wire, line, cable, or instrument, including the wire, line, cable, or instrument of any internal telephonic communication system,
>
> *or*
>
> Willfully and without the consent of all parties to the communication, or in any unauthorized manner, read[ing] or attempt[ing] to read or learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line or cable or is being sent from or received at any place within this state,
>
> *or*
>
> Us[ing], or attempt[ing] to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained,
>
> *or*
>
> Aid[ing], agree[ing] with, employ[ing], or conspire[ing] with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section.

19. CIPA extends to new technologies like software tracking. Notably, "California courts do not read California statutes as limiting themselves to the traditional technologies or models in place at the time the statutes were enacted." *Vishal Shah v. Fandom, Inc.*, 754 F. Supp. 3d 924, 930-931 (N.D. Cal. Oct. 21, 1994). Likewise, the "California Supreme Court regularly reads statutes to apply to new technologies where such a reading would not conflict with the statutory scheme." *In re Google Inc.*, No. 13-MD-02430, 2013 U.S. Dist. LEXIS 172784, 2013 WL 5423918, at *21 (N.D. Cal. Sept. 26, 2013). As such, "courts have repeatedly held" that CIPA is "not limited to the traditional versions of the tools at issue" and have applied CIPA to online tracking technologies "based on the plain language of the statute, the California Supreme Court's pronouncements regarding the broad legislative intent underlying CIPA," and "the California courts' approach to updating obsolete statutes in light of emerging technologies." *Vishal*, 754 F. Supp. 3d at 930-931.

20. Moreover, CIPA § 638.51(a) prohibits companies from "install[ing] or us[ing] a pen register or a trap and trace device without first obtaining a court order."

21. A "pen register" is a "device or process that records or decodes dialing, rerouting, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted, but not the contents of a communication." Cal. Penal Code § 683.50(b). A "trap and trace" device is a "device or process that captures the incoming electronic or other impulses that identify the originating number or other dialing, routing, addressing, or signaling information reasonably likely to identify the source of a wire or electronic communication, but not the contents of a communication." *Id.*

22. CIPA affords a private right of action to any person who has been subjected to a violation of the statute to seek injunctive relief and statutory damages of $5,000 per violation, regardless of whether they suffered actual damages. Cal. Penal Code § 637.2(a)(1).

23. In addition, Article I, Section 1, of the California Constitution lists privacy as a fundamental right of all Californians and provides: "All people are by nature free and independent and have inalienable rights. Among these are enjoying and defending life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining safety, happiness, and privacy." Cal. Const. art. I, § 1. A party has a private right of action against a party that violates this privacy right when it can show (i) it has a legally protected privacy interest in the information at issue (e.g., privacy interest in keeping browsing activity and online interactions private); (ii) it has a reasonable expectation of privacy in the information at issue; and (iii) an intrusion into the privacy interest at issue constitutes an egregious breach of social norms (e.g., watching someone interact with a website and intercepting communications and browsing data without consent).

24. Also, California's Unfair Competition Law ("UCL") prohibits any "unlawful, unfair, or fraudulent business act or practice . . .." Cal. Bus. & Prof. Code § 17200. The data collection practices challenged herein form the crux of Defendant's business model, meaning they are unequivocally a business act or practice. And, as shown herein, such conduct is both unlawful (violates CIPA, the UCL, the California Constitution and other statutes and common law torts) and unfair.

**B. Background of Wunderkind**

25. Wunderkind operates a marketing platform that promises to "increase[] revenue from [website operators'] digital traffic."[2] As Wunderkind explains, its "proprietary identity network recognizes anonymous visitors, combines real-time behavioral signals and autonomously triggers the highest-performing messages across email, text, social, and advertising channels."[3] To do this, Wunderkind must intercept data from and otherwise spy on website visitors.

26. According to Wunderkind, 25% of combined total digital eCommerce revenue is driven by marketing texts and emails sent by Wunderkind to website visitors they have identified. Wunderkind also boasts that it has created consumer profiles for more than a billion people, recognized more than 9 billion devices, and tracked more than 2 trillion digital events per year.

27. Wunderkind promises that its platform "increases revenue through reach and seamlessly integrates into [the website operator's] existing stack, meaning no replatforming needed."[4] According to Wunderkind, "[i]ts all about revenue, all on your own terms and in your own tech."[5]

28. To achieve the revenue increases it promises, Wunderkind engages in systematic and non-consensual online tracking of individuals through its software and related tools. Specifically, Wunderkind has (i) induced thousands of website operators to install its tracking software on their websites; (ii) used the tracking software to intercept data from website visitors in real time; (iii) used the intercepted data and/or its Identity Network to identify those visitors, including when the visitors took steps to prevent such identification and tracking; (iv) created substantive and durable consumer profiles for the individuals once they are identified by assigning them a "PrivacyID," which both elude traditional privacy safeguards consumers use to prevent online tracking and track individuals across devices and websites; and (v) used the consumer profiles in combination with its AI to track and watch website visitors as they interact with the websites, predict future behavior based on the intercepted data, and use that information to determine the exact moment during which

---

[2] https://www.wunderkind.co/.
[3] *Id.*
[4] *Id.*
[5] *Id.*

they should target them with advertisements (e.g., when a website visitor is getting ready to leave the website).

29. For many websites on which Wunderkind's software is installed, website visitors are neither informed that Wunderkind is intercepting their data nor required to consent to the data interception. This is true for every website at issue in this case and includes: CNN.com, imgur.com, Legacy.com, Macys.com, HelloFresh.com, and Everlane.com. As discussed above, each Plaintiff visited at least one of these websites and, as a result, had their data intercepted as discussed herein.

**C. Wunderkind Uses its Identity Network to Identify and Assign a PrivacyID to Website Visitors**

30. Generally, a person visiting a website remains anonymous to the website operator unless the visitor takes affirmative steps like inputting their name, email address, and/or phone number. Absent this type of information, website operators are generally unable to identify website visitors. And, even when providing the website operator with this information, the visitor does not expect this personal information to be intercepted by an unknown third party.

31. Wunderkind estimates that "over 90% of web traffic remains anonymous."[6] Website operators do not like this because "customers are browsing [their] website, but [they] have no idea who they are."[7] This is akin to a person walking into a brick-and-mortar store, browsing, and leaving without making a purchase or providing identifiable information. The store operator does not know who the visitor was and would be unable to directly advertise to him or her as a result.

32. Wunderkind designed its Identity Network and related tools to de-anonymize website traffic for website operators by identifying website visitors regardless of whether they took affirmative steps to identify themselves. In its own words, the "cutting-edge [Identity Network] solution enables marketers to bridge the gap between anonymous web traffic and actionable first-party data" and allows website operators to "recognize and understand consumer behavior at scale."[8] This is akin to a brick-and-mortar store using facial recognition software to identify

---

[6] https://www.wunderkind.co/blog/article/unlocking-the-power-of-wunderkinds-identity-graph-for-personalized-marketing/.

[7] *Id.*

[8] *Id.*

consumers without their consent or knowledge, recording which sections of the store they visited and which products they viewed, and targeting them with advertisements as a result.

33. The core of the Identity Network is the Identity Graph, which is "a comprehensive and proprietary database that stores and manages vast amounts of e-commerce, travel, and publisher client data collected by Wunderkind."[9] By analyzing intercepted data indicating IP address, browser version, and/or device type of the user and using tools like cross-website identification, advanced machine learning, cross-device tracking, cookies, and other non-cookie signals, the Identity Graph can determine who website visitors are regardless of whether the user took affirmative steps to identify themselves.

34. Once Wunderkind identifies an individual on a website, it assigns the individual a PrivacyID. The PrivacyID brings together multiple identifiers for the individual, such as email addresses, phone numbers, device IDs, and even third-party IDs, into a single, unified user profile that is meant to capture user online behavior and engagement.

35. The PrivacyID follows the individual across devices, platforms, and websites. Wunderkind designed the PrivacyID and its tracking software to be durable and evade tools that website visitors traditionally used to prevent this type of tracking. For example, website visitors can typically prevent or limit pixel tracking by taking any of the following actions: clearing cookies, navigating the internet in a privacy mode (e.g., Google's incognito mode), and/or using VPNs to prevent tracking. However, Wunderkind designed the PrivacyID and related tracking technology to evade these tools, as none limit (let alone prevent) Wunderkind from tracking and intercepting website visitor data. In addition, unlike traditional cookies that reset fairly frequently, Wunderkind designed the PrivacyID to neither expire nor reset. The effects of this decision are twofold: (i) it prevents consumers from using common privacy safeguards (such as clearing cookies) to prevent Wunderkind from tracking their behavior and (ii) enables Wunderkind to more effectively track consumers across multiple devices and websites.

---

[9] https://www.wunderskind.com/blog/article/unlocking-the-power-of-wunderkinds-identity-graph-for-personalized-marketing/index.htm.

**D. Once Assigned a PrivacyID, Wunderkind Tracks Website Visitors Across Websites and Devices**

36. After Wunderkind assigns an individual a PrivacyID, it tracks that individual across thousands of websites on which Wunderkind's software has been installed, covertly intercepting data about the individual all the while. To intercept the data, Wunderkind uses invisible tags, pixels, and related tracking software to instantaneously and automatically send website visitors' data and communications with website operators to Wunderkind.

37. Wunderkind intercepts at least the following data from website visitors: online browsing data (i.e., what webpages a consumer has visited and for how long); purchase and consumer data (i.e., the products the individual has purchased); abandoned cart data (i.e., data showing what items a person placed in their online shopping cart but did not purchase); input data (email addresses, phone numbers, and addresses); device information (IP addresses, device details, browser types, and referral sources); and location data of the user.

38. Wunderkind also intercepts several types of behavioral data, including (i) how a user is scrolling on a website; (ii) the level of activity of a user on a webpage; (iii) how and where a user's cursor is moving on a website; (iv) when a user indicates an intent to leave a website; and (v) other mouse and key actions that indicate an intent to act by website visitors.

39. When talking about its customer profiles in an article, Wunderkind lists the following as some of the data it intercepts.[10]

[10] https://www.wunderkind.co/blog/article/one-to-one-marketing/#:~:text=One-to-one%20as%20a%20marketing%20strategy%20isn%E2%80%99t.

> Marketers talk a lot about customer personas, but to make one-to-one marketing work, you have to build segments of "one." Drill down to the customer level.
>
> Data can tell you a lot about any given customer. Create a unique profile for all of your prospects and customers using:
>
> - Browsing Data: What pages do they visit? For how long?
> - Purchase Data: Have they already purchased from you? If so, what did they buy? Are there patterns?
> - Abandoned Cart Data: How likely are they to make a purchase or are they serial shoppers?
> - Customer Support/Sales Touchpoint Data: Have they spoken with someone on your team before?
> - NPS (Net Promoter Score) Data: How satisfied are they with your business?
>
> You need to know more than their title and demographics, but exactly where they are in the funnel and what they need to get them to click that "Buy" button again and again.

40. Wunderkind intercepts this user data because it wants to know exactly what website visitors are doing on their clients' websites so it can show the visitors advertisements at the exact moment the user is most likely to engage with the advertisement. The more effective Wunderkind is at predicting user engagement, the more revenue its clients generate through advertising. And, the more revenue that is attributable to Wunderkind's services and software, the more likely businesses are to purchase them.

41. Wunderkind leverages the intercepted data and WunderkindAI to identify consumers and to predict their future behaviors. As Wunderkind explains, "by combining identity, behavioral data, and agentic automation, Wunderkind doesn't just react to consumers—it anticipates their intent."[11]

**E. Wunderkind Intercepted Plaintiffs' and Class Members' Data Without Consent**

42. For the websites identified herein and those at issue in this case, Wunderkind intercepts data from website visitors without consent or informing the website visitors that the interceptions are occurring. Plaintiffs and Class members visited at least one such website and had their data intercepted without consent as a result.

---

[11] https://www.wunderkind.co/how-it-works/performance-marketing-solutions-for-ecommerce/#:~:text=Wunderkind's%20proprietary%20Identity%20Network%20recognizes,but%20streamlines%20execution%20across%20teams.

43. Moreover, Wunderkind designs its software to operate covertly and to overcome many of the privacy tools available to website visitors. Therefore, a consumer never knows whether any given website has Wunderkind's tracking software embedded and the entire data collection process takes place surreptitiously without the consumer's knowledge or consent.

**F. Wunderkind Uses Consumer Data for Its Own Purposes**

44. By the terms of the agreement between Wunderkind and clients, Wunderkind is specifically allowed to use the intercepted data for its own purposes. Wunderkind admits that it does so, stating that it uses the data "to help us improve our Websites and the products, Services, applications, content and features that we provide."[12]

45. Furthermore, Wunderkind admits that it "may use machine learning via data collected across Client Digital Properties to optimize ad and message timing and to use data to target ads and marketing messages to users inferred interests."[13] Wunderkind also admits that it trains the WunderkindAI on the data it intercepts from website visitors. That means Wunderkind may learn from the intercepted data to develop advertising and marketing strategies that it then sells to its clients.

**FACTS SPECIFIC TO PLAINTIFFS**

46. Each Plaintiff visited at least one website containing the Wunderkind tracker that did not prompt them to provide consent to Wunderkind's data tracking and interception.

47. Wunderkind collected Plaintiffs' behavioral data and their communications with the website operators, which included the products they viewed and purchased, the pages they viewed, form inputs, and how they behaved when on the websites. Defendant also collected other data from Plaintiffs, such as information about their browsers, persistent identifiers, IP addresses, and device fingerprint data to identify them.

48. Wunderkind's tracking software intercepted communications between Plaintiffs and the website operators while those communications were in transit. As data traveled between Plaintiffs' browsers and the website servers, Wunderkind's tracking software intercepted and read

---

[12] https://www.wunderkind.co/privacy/.
[13] *Id.*

these transmissions in real-time, capturing clicks and page visits as they happened, keystrokes and form entries as they were submitted, and navigation commands during transmission. Wunderkind read or attempted to read these communications by analyzing and interpreting the data streams mid-transmission, automatically identifying and classifying data types and values, extracting personal information, search queries, and behavioral data while the communications were still traveling to their intended destination.

49. Given the above, Wunderkind identified Plaintiffs, assigned them a PrivacyID, and created profiles containing their likes and interests, which Wunderkind continued to enrich as Plaintiffs used websites on which Wunderkind was installed.

50. Plaintiffs did not give Wunderkind consent to track or intercept their data. Plaintiffs also did not know or have any reason to know that Wunderkind was secretly and surreptitiously collecting their data and/or creating consumer profiles for them that were used to target marketing at them.

## CLASS ACTION ALLEGATIONS

51. **Class Definition**: Plaintiffs bring this proposed class action pursuant to California Code of Civil Procedure § 382 on behalf of themselves and a Class of others similarly situated, defined as follows:

> All California residents who visited a website with Wunderkind's software embedded during the applicable statute of limitations period and had their data captured by Wunderkind without providing informed consent.
>
> Excluded from the Class are Defendant and its officers, directors or employees; any entity in which Defendant has a controlling interest; and any affiliate, legal representative, heir or assign of Defendant. Also excluded from the Class are any attorneys appearing in this matter, any federal, state or local governmental entities, any judicial officer presiding over this action and the members of his or her immediate family and judicial staff, and any juror assigned to this action.

52. The Class Period is the full extent of the applicable limitations period, including any tolling or other equitable considerations that extend the limitations period.

53. **Class Identity/Ascertainability:** The Class is readily identifiable and is one for which records should exist. Wunderkind has records of those the websites with its software embedded and of the parties whose data was captured.

54. **Numerosity**: The exact number of Class Members is unknown and not available to Plaintiffs at this time. However, given the scale and scope of Defendant's data collection practices, it is clear that there are hundreds of thousands or millions of California residents who are members of the Class.

55. **Typicality**: Plaintiffs' claims are typical of the claims of Class Members because Plaintiffs and Class Members have had their personal information and communications with website operators intercepted by Defendant without consent and using the same tracking technologies.

56. **Commonality**: There are many questions of law and fact common to the claims of Plaintiffs and the Class, including:

A. Whether Defendant read, attempted to read, or learned the content of the communications intercepted by its tracking technology;

B. Whether Defendant intercepted the communications while in violation of § 631 of CIPA;

C. Whether Defendant's data interception was willful;

D. Whether Defendant used the intercepted data;

E. Whether Defendant's data collection practices constitute a business practice as the term is used in the UCL;

F. Whether Defendant's data collection practices constitute unfair or unlawful business practices, as those terms are used in the UCL;

G. Whether Defendant's data collection practices constitute a breach of social norms, as those terms are used in Section 1 of the California Constitution.

57. **Predominance:** The above-listed questions of law and fact are common to the Class and will predominate over questions that may affect individual Class Members.

58. **Adequacy**: Plaintiffs will fairly and adequately protect the interests of the Class because Plaintiffs' interests are aligned with, and not antagonistic to, those of the other members of the Class and Plaintiffs have retained counsel competent and experienced in the prosecution of class actions and complex data privacy cases to represent them and the Class.

59. **Superiority and manageability**: A Class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all Class Members is impracticable. The individual prosecution of separate actions by individuals would lead to repetitive adjudication of common questions and fact and law and create a risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for Defendant. There will be no difficulty in the management of this action as a Class action.

**FIRST CAUSE OF ACTION**
**Violation of Cal. Penal Code § 631**
**(<u>On behalf of Plaintiffs and the Class</u>)**

60. Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

61. Wunderkind, "by means of any machine, instrument, contrivance, or in any other manner," has "willfully and without the consent of all parties to the communications, or in any unauthorized manner, read[] or attempt[ed] to read or learn the contents or meaning of any message, report, or communication while the same is in transit or being sent from or received at any place within this state." Cal. Penal Code § 631(a). Wunderkind has also "use[d], or attempt[ed] to use, in any manner, or for any purpose, or to communicate in any, any information so obtained." *Id.*

62. Defendant's software is a "machine, instrument, contrivance . . ." used to track and intercept data from website visitors.

63. Defendant read, attempted to read, or otherwise learned the content of the communications between Plaintiffs/Class members and website operators, which included information about the web pages Plaintiffs and the Class viewed, items they placed inside their shopping carts, and behavioral data like how they scrolled on a website. As such, the data intercepted by Wunderkind is "content" under § 631 of CIPA.

64. Information such as email addresses, phone numbers, IP addresses, and form inputs that Plaintiffs and the Class input into the websites is also "content" under § 631 of CIPA.

65. Furthermore, Defendant read, attempted to read, and/or learned the contents of communications sent from or received within the State of California in real time. Plaintiffs and the Class intended their transmissions to be private communications between them and the business website, and not an unknown third party.

66. Defendant did not act as a mere extension of the website visited by Plaintiffs and the Class because it used the communications for its own purposes. Defendant used or (in the alternative) has the capability to use the data it intercepted to develop and/or improve its own products and services.

67. Defendant never obtained any consent whatsoever from Plaintiffs and the Class.

68. Plaintiffs and the Class seek an injunction and statutory damages in the amount of $5,000 per violation pursuant to Cal. Pen. Code § 637.2.

**SECOND CAUSE OF ACTION**
**Violation of Cal. Penal Code § 638.51**
**(On behalf of Plaintiffs and the Class)**

69. Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

70. California law prohibits the installation of a pen register without first obtaining a court order. Cal. Penal Code § 638.51.

71. The statute defines a "pen register" as "a device or process that records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted, but not the contents of a communication." Cal. Penal Code § 638.50(b).

72. Defendant's software is a "pen register" because it is a device or process that records addressing or signaling information—in this instance, Plaintiffs' and Class Members' identifying information device fingerprint data, IP addresses, and other persistent identifiers—from electronic communications transmitted by their devices. Furthermore, Defendant's software is a device or process that identifies consumers, gathers data, and correlates data through sophisticated device fingerprinting and its consumer identification functionality.

73. Defendant was not authorized by any court order to use a pen register to track Plaintiffs' and Class Members' location and personal information, nor did it obtain consent from Plaintiffs and the Class to operate such a device.

74. Plaintiffs and the Class seek injunctive relief and statutory damages in the amount of $5,000 per violation pursuant to Cal. Penal Code § 637.2.

**THIRD CAUSE OF ACTION**
**Violation of the California Comprehensive Computer Data Access and Fraud Act**
**Cal. Penal Code § 502**
**(On behalf of Plaintiffs and the Class)**

75. Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

76. The California Legislature enacted the Comprehensive Computer Data Access and Fraud Act ("CDAFA") to "expand the degree of protection afforded to individuals . . . from tampering, interference, damage, and unauthorized access to lawfully created computer data and computer systems." Cal. Penal Code § 502(a). In enacting the statute, the Legislature emphasized the need to protect individual privacy: "The Legislature further finds and declares that protection of the integrity of all types and forms of lawfully created computers, computer systems, and computer data is vital to the protection of the privacy of individuals." *Id.*

77. Plaintiffs' and Class Members' devices are "computers" or "computer systems" within the meaning of § 502(b) because they are devices capable of being used in conjunction with external files and perform functions such as logic, arithmetic, data storage and retrieval, and communication.

78. Defendant violated the following sections of CDAFA § 502(c):

79. "Knowingly accesses and without permission... uses any data, computer, computer system, or computer network in order to... wrongfully control or obtain money, property, or data." *Id.* § 502(c)(1).

80. "Knowingly accesses and without permission takes, copies, or makes use of any data from a computer, computer system, or computer network." *Id.* § 502(c)(2).

81. "Knowingly and without permission accesses or causes to be accessed any computer, computer system, or computer network." *Id.* § 502(c)(7).

82. Defendant knowingly "accessed" Plaintiffs' and the Class Members' computers and/or computer systems because it purposefully gained entry to and/or caused output from their computers to obtain personal information, which includes the data Wunderkind intercepted.

83. Plaintiffs and the Class suffered damage and/or loss resulting from Defendant's conduct described herein. Specifically: (1) Defendant's software occupied Plaintiffs' and the Class's storage space on their devices without authorization; (2) Defendant's software caused data to be output from Plaintiffs' and the Class's devices; (3) Defendant's acts used computer resources of the device; and (4) Defendant was unjustly enriched and profited from the data taken from Plaintiffs and the Class.

84. Plaintiffs and the Class now seek compensatory damages, injunctive relief, disgorgement of profits, other equitable relief, punitive damages, and attorneys' fees pursuant to § 502(e)(1)–(2).

**FOURTH CAUSE OF ACTION**
**Invasion of Privacy**
**Violation of Art. 1, § 1 of the California Constitution**
**(On behalf of Plaintiffs and the Class)**

85. Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

86. "Privacy" is listed in Article I, Section 1, of the California Constitution as a fundamental right of all Californians. That section of the Constitution provides as follows: "All people are by nature free and independent and have inalienable rights. Among these are enjoying and defending life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining safety, happiness, and privacy." Cal. Const. art. I, § 1.

87. The right to privacy in California's Constitution creates a right of action against private entities such as Defendant. To state a claim for invasion of privacy under the California Constitution, a plaintiff must establish (1) a legally protected privacy interest; (2) a reasonable expectation of privacy; and (3) an intrusion so serious in nature, scope, and actual or potential impact as to constitute an egregious breach of social norms.

88. Plaintiffs and Class Members have a legally protected privacy interest in their IP addresses, location data, browsing data, product selections, form inputs, and other routing

information that Wunderkind captures without notice or consent when they access and view websites implementing Wunderkind's Tracking Software. These privacy interests are recognized by the California Constitution, CDAFA, and CIPA.

89. Plaintiffs and Class Members had a reasonable expectation of privacy concerning this data when navigating the internet. Wunderkind is a third-party data broker with whom Plaintiffs and Class Members have no direct relationship, which Wunderkind and its client-websites use to collect Plaintiffs' and Class Members' IP addresses, location data, device information, and other routing information across multiple unrelated websites. Wunderkind also uses this information to build comprehensive profiles of their online activities.

90. The identifiable and private information Wunderkind intercepted, stored, and used without Plaintiffs' and Class Members' consent was used to track them consistently and persistently across multiple websites and to serve targeted advertisements. The manner in which Wunderkind intercepted this information deliberately circumvented established privacy-protection mechanisms and violated social norms.

91. Defendant's conduct constitutes an extremely serious invasion of privacy that would be highly offensive to a reasonable person because: (i) the information collected by Wunderkind is personally identifying information protected by the California Constitution and numerous statutes; (ii) Wunderkind deliberately designed its Tracking Software to circumvent privacy protections such as Safari's tracking prevention and Chrome's Incognito mode; (iii) Wunderkind's "identity resolution" technology creates comprehensive profiles of users by linking their activities across multiple unrelated websites and across multiple devices; (iv) Defendant did not have authorization or consent to collect users' IP addresses and other routing information; and (v) this invasion deprived Plaintiffs and Class Members of the ability to control the dissemination and use of their personal information, an ability that is a fundamental privacy right.

92. Reasonable individuals do not expect that there is an entity intercepting and monitoring their personally identifiable online activity across multiple websites, let alone using this information for profit through its identity resolution and behavioral targeting services.

93. Defendant's conduct violated the privacy of hundreds of thousands (if not millions) of Class Members, including Plaintiffs. Defendant did not have consent to intercept this information, let alone use and monetize it.

94. As a direct and proximate result of Defendant's actions, Plaintiffs and Class Members have had their privacy invaded and have sustained injury, including injury to their peace of mind and the loss of control over their personal information.

95. Plaintiffs and Class Members seek appropriate relief for those injuries, including but not limited to restitution, disgorgement of profits earned by Defendant because of, by way of or in connection with the intrusions upon Plaintiffs' and Class Members' privacy, nominal damages, and all other equitable relief that will compensate Plaintiffs and Class Members properly for the harm to their privacy interests.

96. Plaintiffs also seek such other relief as the Court may deem just and proper.

**FIFTH CAUSE OF ACTION**
**Violation of the Unfair Competition Law**
**Cal. Bus. & Prof. Code § 17200, *et seq.***
**(On behalf of Plaintiffs and the Class)**

97. Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

98. California's Unfair Competition Law ("UCL") prohibits any "unlawful, unfair, or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200.

99. Defendant engaged in unlawful business practices in connection with their unauthorized collection of Plaintiffs' and Class Members' private information, in violation of the UCL.

100. The acts, omissions, and conduct of Defendant as alleged herein constitute "business practices" within the meaning of the UCL.

101. Defendant violated the "unlawful" prong of the UCL by violating, inter alia, Plaintiffs' and Class Members' constitutional rights to privacy, state privacy statutes, and state consumer protection statutes.

102. Defendant's acts, omissions, and conduct also violate the "unfair" prong of the UCL because those acts, omissions, and conduct, as alleged therein, offended public policy (including state privacy statutes and state consumer protection statutes) and constitute immoral, unethical, oppressive, and unscrupulous activities that caused substantial injury, including to Plaintiffs and Class Members.

103. The harm caused by Defendant's conduct outweighs any potential benefits attributable to such conduct, and there were reasonably available alternatives to further Defendant's legitimate business interests other than Defendant's conduct described herein.

104. As result of Defendant's violations of the UCL, Plaintiffs and Class Members have suffered injury in fact and lost money or property, including but not limited to valuable consideration, e.g., access to their private and personal data. Plaintiffs' and Class Members' personal data, including web browsing and device data and personally identifying and addressing information has monetary value. Defendant deprived Plaintiffs and Class Members of that valuable data without providing just compensation. Plaintiffs and Class Members would not have used certain websites had they known Defendant was disclosing their personally identifying and addressing information to third parties through those sites.

105. UCL § 17203 provides that the Court may restore to any person in interest any money or property which may have been acquired by means of unfair, deceptive, and fraudulent business acts and practices and may order restitution to Plaintiffs. Plaintiffs and Class Members are entitled under UCL §§ 17203 and 17208 to restitution and restoration of all ill-gotten money and property belonging to Plaintiffs and Class Members in Defendant's possession.

106. As a result of Defendant's violations of the UCL, Plaintiffs and Class Members are further entitled to injunctive relief enjoining Defendant's unlawful and unfair business activities and practices, including an injunction terminating all further distributions of Plaintiffs' and Class Members' personal data. This is particularly true since the dissemination of Plaintiffs' and Class Members' information is ongoing.

107. Plaintiffs additionally seek any and all other equitable relief that the Court deems just and proper.

**SIXTH CAUSE OF ACTION**
**Common Law Invasion of Privacy – Intrusion Upon Seclusion**
**(On behalf of Plaintiffs and the Class)**

108. Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

109. To state a claim for intrusion upon seclusion, Plaintiffs must establish that: (1) the defendant intruded on a place, conversation, or matter in which Plaintiffs had a reasonable expectation of privacy; and (2) the intrusion would be highly offensive to a reasonable person.

110. Defendant's collection, interception, and use of Plaintiffs' and Class Members' personally identifiable information, including IP addresses, location information, and device identifiers constitutes an intentional intrusion. Wunderkind's use of this information to create detailed profiles of individuals through its "identity resolution network," which tracks and profiles Plaintiffs and Class Members across multiple unrelated websites, likewise constitutes an intentional intrusion.

111. Plaintiffs and Class Members reasonably expected that their IP addresses, location data, and other personal information would not be intercepted, collected, and used by Wunderkind—a third-party data broker with whom they have no direct relationship.

112. This expectation is particularly reasonable given that Wunderkind operates entirely behind the scenes, with no visible interface for users, no direct services provided to users, and no opportunity for users to review or consent to Wunderkind's privacy practices.

113. The information Wunderkind collects is especially sensitive because it includes IP addresses (which reveal users' geographic locations) and is used to create comprehensive profiles tracking users' activities across multiple unrelated websites.

114. Plaintiffs and Class Members did not consent to, authorize, or understand Wunderkind's interception or use of their private data.

115. Defendant's conduct is highly offensive to a reasonable person because: (a) it violates established social norms and expectations regarding online privacy; (b) it circumvents standard privacy protection measures, continuing to function even when users take affirmative steps to protect their privacy through traditional tracking prevention features; (c) it occurs without users' knowledge or consent and provides no opportunity for users to opt out; (d) it creates comprehensive

profiles of users' online activities across multiple unrelated websites and across devices through Wunderkind's identity resolution technology; and (e) it monetizes users' personal information for Defendant's commercial gain without their knowledge or compensation.

116. Defendant's intrusion is particularly egregious because it deliberately undermines users' attempts to protect their privacy. As demonstrated in Wunderkind's own documentation, its Tracking Software continues to function even when users employ privacy-focused browsers or browsing modes, revealing Wunderkind's intent to surveille users regardless of their expressed privacy preferences.

117. Defendant's conduct caused Plaintiffs and Class Members harm, including a violation of their privacy interests, loss of control over their personal information, and emotional distress from the knowledge that their online activities have been secretly monitored and profiled.

118. Plaintiffs and Class Members seek damages to compensate for the harm to their privacy interests, among other damages, as well as disgorgement of profits made by Defendant as a result of its intrusion upon seclusion.

119. Plaintiffs and Class Members are also entitled to punitive damages resulting from the malicious, willful, and intentional nature of Defendant's actions, directed at injuring Plaintiffs and Class Members in conscious disregard of their rights. Such damages are needed to deter Defendant from engaging in such conduct in the future.

120. Plaintiffs and Class Members also seek any other relief the Court may deem just and proper.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs Daniel Wine, Allison Blank, Sandra Sion, and Kevin Smith individually and on behalf of the Class, pray for the following relief:

(a) An order certifying the Class as defined above, appointing Daniel Wine, Allison Blank, Sandra Sion, and Kevin Smith as the representatives of the Class, and appointing their counsel as Class Counsel;

(b) An order declaring that Defendant's actions, as set out above, violate Cal. Pen. Code § 631(a), Cal. Pen. Code § 638.51, Cal. Pen. Code § 502, Art. 1, § 1 of the California Constitution,

and Cal. Business & Professional Code § 17200, and constitute a common law invasion of privacy;

(c) An injunction requiring Defendant to cease all unlawful activities, including the use of its software on websites without obtaining consent from website visitors;

(d) An award of statutory damages, compensatory damages, disgorgement of profits, punitive damages, costs, and attorneys' fees;

(e) Such other and further relief that the Court deems reasonable and just.

**JURY DEMAND**

Plaintiffs request a trial by jury of all claims that can be so tried.

Respectfully submitted,

**MOGIN LAW LLP**

Dated: September 26, 2025

By: */s/ Daniel J. Mogin*

Daniel J. Mogin (SBN No. 95624)
Timothy Z. LaComb (SBN No. 314244)
4225 Executive Square, Suite 600
La Jolla, CA 92037
Telephone: (619) 687-6611
Facsimile: (619) 687-6610
dmogin@moginlawllp.com
tlacomb@moginlawllp.com

**JOSEPH SAVERI LAW FIRM, LLP**
Joseph R. Saveri (SBN 130064)
Cadio Zirpoli (SBN 179108)
Kevin E. Rayhill (SBN 267496)
Holden Benon (SBN 325847)
601 California Street, Suite 1505
San Francisco, CA 94108
Tel (415) 500-6800
jsaveri@saverilawfirm.com
czirpoli@saverilawfirm.com
hbenon@saverilawfirm.com
krayhill@saverilawfirm.com

**DON BIVENS PLLC**
Don Bivens (*pro hac vice* forthcoming)
15169 N. Scottsdale Road, Suite 205

Scottsdale, AZ 85254
Telephone: (602) 762-2661
don@donbivens.com

*Counsel for Plaintiffs and the Proposed Class*

**CM-010**

ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):*
Daniel J. Mogin (SBN No. 95624), Timothy Z. LaComb (SBN No. 314244)
MOGIN LAW LLP, 4225 Executive Square, Suite 600, La Jolla, CA 92037

TELEPHONE NO.: (619) 687-6611 FAX NO. : (619) 687-6610
EMAIL ADDRESS: dmogin@moginlawllp.com, tlacomb@moginlawllp.com
ATTORNEY FOR *(Name):* Plaintiffs Daniel Wine, Allison Blank, Sandra Sion, and Kevin Smith

*FOR COURT USE ONLY*

**ELECTRONICALLY FILED**
Superior Court of California,
County of Alameda
**09/29/2025 at 12:00:00 AM**
By: Andrel Gospel,
Deputy Clerk

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA**
STREET ADDRESS: 24405 Amador Street
MAILING ADDRESS:
CITY AND ZIP CODE: Hayward, CA 94544
BRANCH NAME: Hayward Hall of Justice

CASE NAME:
Daviel Wine, et al. v. Wunderkind Corp.

**CIVIL CASE COVER SHEET**

[x] **Unlimited** (Amount demanded exceeds $35,000)
[ ] **Limited** (Amount demanded is $35,000 or less)

**Complex Case Designation**

[ ] Counter [ ] Joinder

Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402)

CASE NUMBER: 25CV145737

JUDGE:

DEPT.:

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[ ] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
[ ] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)

**Employment**
[ ] Wrongful termination (36)
[ ] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)

**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)

**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)

**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
[ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
[ ] RICO (27)
[x] Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition *(not specified above)* (43)

2. This case [x] is [ ] is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [x] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [x] Substantial amount of documentary evidence
   d. [x] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision
3. Remedies sought *(check all that apply):* a. [x] monetary b. [x] nonmonetary; declaratory or injunctive relief c. [x] punitive
4. Number of causes of action *(specify):* 6: Unfair competition, Invasion of privacy, 3 statutory violations
5. This case [x] is [ ] is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: September 26, 2025

Daniel J. Mogin
(TYPE OR PRINT NAME)

*/s/ Daniel J. Mogin*
(SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**

- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

CM-010

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the Civil Case Cover Sheet contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the Civil Case Cover Sheet to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
- Auto (22)–Personal Injury/Property Damage/Wrongful Death
- Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
- Asbestos (04)
  - Asbestos Property Damage
  - Asbestos Personal Injury/ Wrongful Death
- Product Liability *(not asbestos or toxic/environmental)* (24)
- Medical Malpractice (45)
  - Medical Malpractice– Physicians & Surgeons
- Other Professional Health Care Malpractice
- Other PI/PD/WD (23)
  - Premises Liability (e.g., slip and fall)
  - Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
  - Intentional Infliction of Emotional Distress
  - Negligent Infliction of Emotional Distress
  - Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
- Business Tort/Unfair Business Practice (07)
- Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
- Defamation (e.g., slander, libel) (13)
- Fraud (16)
- Intellectual Property (19)
- Professional Negligence (25)
  - Legal Malpractice
  - Other Professional Malpractice *(not medical or legal)*
- Other Non-PI/PD/WD Tort (35)

**Employment**
- Wrongful Termination (36)
- Other Employment (15)

**Contract**
- Breach of Contract/Warranty (06)
  - Breach of Rental/Lease
    - Contract *(not unlawful detainer or wrongful eviction)*
  - Contract/Warranty Breach–Seller
    - Plaintiff *(not fraud or negligence)*
  - Negligent Breach of Contract/ Warranty
  - Other Breach of Contract/Warranty
- Collections (e.g., money owed, open book accounts) (09)
  - Collection Case–Seller Plaintiff
  - Other Promissory Note/Collections Case
- Insurance Coverage *(not provisionally complex)* (18)
  - Auto Subrogation
  - Other Coverage
- Other Contract (37)
  - Contractual Fraud
  - Other Contract Dispute

**Real Property**
- Eminent Domain/Inverse Condemnation (14)
- Wrongful Eviction (33)
- Other Real Property (e.g., quiet title) (26)
  - Writ of Possession of Real Property
  - Mortgage Foreclosure
  - Quiet Title
  - Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*

**Unlawful Detainer**
- Commercial (31)
- Residential (32)
- Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*

**Judicial Review**
- Asset Forfeiture (05)
- Petition Re: Arbitration Award (11)
- Writ of Mandate (02)
  - Writ–Administrative Mandamus
  - Writ–Mandamus on Limited Court Case Matter
  - Writ–Other Limited Court Case Review
- Other Judicial Review (39)
  - Review of Health Officer Order
  - Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
- Antitrust/Trade Regulation (03)
- Construction Defect (10)
- Claims Involving Mass Tort (40)
- Securities Litigation (28)
- Environmental/Toxic Tort (30)
- Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)

**Enforcement of Judgment**
- Enforcement of Judgment (20)
  - Abstract of Judgment (Out of County)
- Confession of Judgment *(non-domestic relations)*
- Sister State Judgment
- Administrative Agency Award *(not unpaid taxes)*
- Petition/Certification of Entry of Judgment on Unpaid Taxes
- Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
- RICO (27)
- Other Complaint *(not specified above)* (42)
  - Declaratory Relief Only
  - Injunctive Relief Only *(non-harassment)*
  - Mechanics Lien
  - Other Commercial Complaint Case *(non-tort/non-complex)*
  - Other Civil Complaint *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
- Partnership and Corporate Governance (21)
- Other Petition *(not specified above)* (43)
  - Civil Harassment
  - Workplace Violence
  - Elder/Dependent Adult Abuse
  - Election Contest
  - Petition for Name Change
  - Petition for Relief From Late Claim
  - Other Civil Petition

# SUPERIOR COURT OF CALIFORNIA
# COUNTY OF ALAMEDA

Reserved for Clerk's File Stamp

FILED
Superior Court of California
County of Alameda
09/29/2025
Chad Flike, Executive Officer/Clerk of the Court
By: [signature] Deputy
A. Gospel

COURTHOUSE ADDRESS:
Rene C. Davidson Courthouse
Administration Building, 1221 Oak Street, Oakland, CA 94612

PLAINTIFF:
Daniel Wine et al

DEFENDANT:
Wunderkind Corp., a Delaware Corporation

**NOTICE OF CASE MANAGEMENT CONFERENCE**

CASE NUMBER:
25CV145737

TO THE PLAINTIFF(S)/ATTORNY(S) FOR PLAINTIFF(S) OF RECORD:

You are ordered to serve all named defendants and file proofs of service on those defendants with the court within 60 days of the filing of the complaint (Cal. Rules of Court, 3.110(b)).

Give notice of this conference to all other parties and file proof of service.

Your Case Management Conference has been scheduled on:

Date: 02/23/2026 Time: 2:30 PM Dept.: 21
Location: Rene C. Davidson Courthouse
Administration Building, 1221 Oak Street, Oakland, CA 94612

TO DEFENDANT(S)/ATTORNEY(S) FOR DEFENDANT(S) OF RECORD:

The setting of the Case Management Conference does not exempt the defendant from filing a responsive pleading as required by law, you must respond as stated on the summons.

TO ALL PARTIES who have appeared before the date of the conference must:

Pursuant to California Rules of Court, 3.725, a completed Case Management Statement (Judicial Council form CM-110) must be filed and served at least 15 calendar days before the Case Management Conference. The Case Management Statement may be filed jointly by all parties/attorneys of record or individually by each party/attorney of record.

**Meet and confer**, in person or by telephone as required by Cal. Rules of Court, rule 3.724.

**Post jury fees** as required by Code of Civil Procedure section 631.

If you do not follow the orders above, the court may issue an order to show cause why you should not be sanctioned under Cal. Rules of Court, rule 2.30. Sanctions may include monetary sanctions, striking pleadings or dismissal of the action.

The judge may place a Tentative Case Management Order in your case's on-line register of actions before the conference. This order may establish a discovery schedule, set a trial date or refer the case to Alternate Dispute Resolution, such as mediation or arbitration. Check the court's eCourt Public Portal for each assigned department's procedures regarding tentative case management orders at https://eportal.alameda.courts.ca.gov.

Expedited Jury Trials

If the parties agree, they may try the case in an Expedited Jury Trial. Code of Civ. Proc. § 630.01 et seq. In short, the parties would agree to the following: 8 jurors (6 must agree); 3 peremptory challenges per side; 5-hour time limit per side, unless otherwise agreed and approved; one to two court days for completion, unless otherwise agreed and approved; high/low arrangement option; and limited right to appeal. For additional information, please see the following links:

- EJT-010-INFO* Expedited Jury Trial Information Sheet (ca.gov)
- EJT-008 Agreement of Parties (Mandatory Expedited Jury Trial Procedures) (ca.gov)
- EJT-020 [Proposed] Consent Order for Voluntary Expedited Jury Trial (ca.gov)

| SUPERIOR COURT OF CALIFORNIA<br>COUNTY OF ALAMEDA | Reserved for Clerk's File Stamp |
|---|---|
| COURTHOUSE ADDRESS:<br>Rene C. Davidson Courthouse<br>1225 Fallon Street, Oakland, CA 94612 | FILED<br>Superior Court of California<br>County of Alameda<br>09/29/2025<br>Chad Finke, Executive Officer / Clerk of the Court<br>By: [signature] Deputy<br>A. Gospel |
| PLAINTIFF/PETITIONER:<br>Daniel Wine et al | |
| DEFENDANT/RESPONDENT:<br>Wunderkind Corp., a Delaware Corporation | |
| **CERTIFICATE OF MAILING** | CASE NUMBER:<br>25CV145737 |

**I, the below-named Executive Officer/Clerk of the above-entitled court, do hereby certify that I am not a party to the cause herein, and that on this date I served the attached document upon each party or counsel named below by placing the document for collection and mailing so as to cause it to be deposited in the United States mail at the courthouse in Oakland, California, one copy of the original filed/entered herein in a separate sealed envelope to each address as shown below with the postage thereon fully prepaid, in accordance with standard court practices.**

Joseph Saveri
Joseph Saveri Law Firm, LLP
601 California St, Ste 1505
San Francisco, CA 94108

Chad Finke, Executive Officer / Clerk of the Court

Dated: 10/01/2025 By: [signature]

A. Gospel, Deputy Clerk

SUM-100

# SUMMONS
## *(CITACION JUDICIAL)*

***FOR COURT USE ONLY***
***(SOLO PARA USO DE LA CORTE)***

**ELECTRONICALLY FILED**
Superior Court of California
County of Alameda
09/29/2025
Chad Finke, Executive Officer / Clerk of the Court
By: A. Gospel Deputy

**NOTICE TO DEFENDANT:**
***(AVISO AL DEMANDADO):***
WUNDERKIND CORP., a Delaware corporation

**YOU ARE BEING SUED BY PLAINTIFF:**
***(LO ESTÁ DEMANDANDO EL DEMANDANTE):***
DANIEL WINE, ALLISON BLANK, SANDRA SION, and KEVIN SMITH, individually and on behalf of all others similarly situated

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

***¡AVISO!** Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):*
Alameda County Superior Court, 24405 Amador Street, Hayward, CA 94544

CASE NUMBER:
*(Número del Caso):*
25CV145737

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
See Attachment.

DATE: 09/29/2025 *(Fecha)* Chad Finke, Executive Officer / Clerk of the Court
Clerk, by *(Secretario)* A. Gospel, Deputy *(Adjunto)*

*(For proof of service of this summons, use* Proof of Service of Summons *(form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario* Proof of Service of Summons, *(POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☒ on behalf of *(specify):* Wunderkind, Corp.

under:
- ☐ CCP 416.10 (corporation)
- ☐ CCP 416.20 (defunct corporation)
- ☐ CCP 416.40 (association or partnership)
- ☐ other *(specify):*
- ☐ CCP 416.60 (minor)
- ☐ CCP 416.70 (conservatee)
- ☐ CCP 416.90 (authorized person)

4. ☐ by personal delivery on *(date)*:

# ATTACHMENT

## Attorneys for Plaintiffs

**MOGIN LAW LLP**
Daniel J. Mogin (SBN No. 95624)
Timothy Z. LaComb (SBN No. 314244)
4225 Executive Square, Suite 600
La Jolla, CA 92037
Telephone: (619) 687-6611
Facsimile: (619) 687-6610
Email: dmogin@moginlawllp.com
tlacomb@moginlawllp.com

**JOSEPH SAVERI LAW FIRM, LLP**
Joseph R. Saveri (SBN 130064)
Cadio Zirpoli (SBN 179108)
Kevin E. Rayhill (SBN 267496)
Holden Benon (SBN 325847)
601 California Street, Suite 1505
San Francisco, CA 94108
Telephone: (415) 500-6800
Fax: (415) 395-9940
Email jsaveri@saverilawfirm.com
czirpoli@saverilawfirm.com
krayhill@saverilawfirm.com
hbenon@saverilawfirm.com

**DON BIVENS PLLC**
Don Bivens (*pro hac vice* forthcoming)
15169 N. Scottsdale Road, Suite 205
Scottsdale, AZ 85254
Telephone: (602) 762-2661
Email: don@donbivens.com

**POS-015**

| ATTORNEY OR PARTY WITHOUT ATTORNEY: | FOR COURT USE ONLY |
|---|---|
| STATE BAR NO: | |
| NAME: Joseph R. Saveri (SBN 130064), Kevin E. Rayhill (SBN 267496) | |
| FIRM NAME: Joseph Saveri Law Firm, LLP | |
| STREET ADDRESS: 601 California Street, Suite 1505 | |
| CITY: San Francisco STATE: CA ZIP CODE: 94108 | |
| TELEPHONE NO.: (415) 500-6800 FAX NO.: (415) 395-9940 | |
| E-MAIL ADDRESS: jsaveri@saverilawfirm.com, krayhill@saverilawfirm.com | |
| ATTORNEY FOR (*Name*): Plaintiffs Daniel Wine, Allison Blank, Sandra Sion, and Kevin Smith | |
| **SUPERIOR COURT OF CALIFORNIA, COUNTY OF** ALAMEDA | |
| STREET ADDRESS: 1221 Oak Street, Oakland | |
| MAILING ADDRESS: | |
| CITY AND ZIP CODE: Oakland, CA 94612 | |
| BRANCH NAME: Rene C. Davidson Courthouse | |
| Plaintiff/Petitioner: Wine, et al. | |
| Defendant/Respondent: Wunderkind Corp. | |
| **NOTICE AND ACKNOWLEDGMENT OF RECEIPT—CIVIL** | CASE NUMBER: 25CV145737 |

TO *(insert name of party being served)*: Defendant Wunderkind Corp.

**NOTICE**

The summons and other documents identified below are being served pursuant to section 415.30 of the California Code of Civil Procedure. Your failure to complete this form and return it within 20 days from the date of mailing shown below may subject you (or the party on whose behalf you are being served) to liability for the payment of any expenses incurred in serving a summons on you in any other manner permitted by law.

If you are being served on behalf of a corporation, an unincorporated association (including a partnership), or other entity, this form must be signed by you in the name of such entity or by a person authorized to receive service of process on behalf of such entity. In all other cases, this form must be signed by you personally or by a person authorized by you to acknowledge receipt of summons. If you return this form to the sender, service of a summons is deemed complete on the day you sign the acknowledgment of receipt below.

Date of mailing: October 2, 2025

Kevin E. Rayhill
(TYPE OR PRINT NAME)

*/s/ Kevin E. Rayhill*
(SIGNATURE OF SENDER—MUST NOT BE A PARTY IN THIS CASE)

**ACKNOWLEDGMENT OF RECEIPT**

This acknowledges receipt of ***(to be completed by sender before mailing):***

1. [x] A copy of the summons and of the complaint.
2. [x] Other *(specify)*:

Civil Case Cover Sheet
Notice of Case Management Conference

***(To be completed by recipient):***

Date this form is signed: 10/22/25

Ashley L. Shively
(TYPE OR PRINT YOUR NAME AND NAME OF ENTITY, IF ANY, ON WHOSE BEHALF THIS FORM IS SIGNED)

[signature]
(SIGNATURE OF PERSON ACKNOWLEDGING RECEIPT, WITH TITLE IF ACKNOWLEDGMENT IS MADE ON BEHALF OF ANOTHER PERSON OR ENTITY)

POS-015

| ATTORNEY OR PARTY WITHOUT ATTORNEY: STATE BAR NO: | FOR COURT USE ONLY |
|---|---|
| NAME: Joseph R. Saveri (SBN 130064), Kevin E. Rayhill (SBN 267496)<br>FIRM NAME: Joseph Saveri Law Firm, LLP<br>STREET ADDRESS: 601 California Street, Suite 1505<br>CITY: San Francisco STATE: CA ZIP CODE: 94108<br>TELEPHONE NO.: (415) 500-6800 FAX NO.: (415) 395-9940<br>E-MAIL ADDRESS: jsaveri@saverilawfirm.com, krayhill@saverilawfirm.com<br>ATTORNEY FOR (*Name*): Plaintiffs Daniel Wine, Allison Blank, Sandra Sion, and Kevin Smith | |
| **SUPERIOR COURT OF CALIFORNIA, COUNTY OF** ALAMEDA<br>STREET ADDRESS: 1221 Oak Street, Oakland<br>MAILING ADDRESS:<br>CITY AND ZIP CODE: Oakland, CA 94612<br>BRANCH NAME: Rene C. Davidson Courthouse | |
| Plaintiff/Petitioner: Wine, et al.<br>Defendant/Respondent: Wunderkind Corp. | |
| **NOTICE AND ACKNOWLEDGMENT OF RECEIPT—CIVIL** | CASE NUMBER:<br>25CV145737 |

TO *(insert name of party being served):* Defendant Wunderkind Corp.

## NOTICE

The summons and other documents identified below are being served pursuant to section 415.30 of the California Code of Civil Procedure. Your failure to complete this form and return it within 20 days from the date of mailing shown below may subject you (or the party on whose behalf you are being served) to liability for the payment of any expenses incurred in serving a summons on you in any other manner permitted by law.

If you are being served on behalf of a corporation, an unincorporated association (including a partnership), or other entity, this form must be signed by you in the name of such entity or by a person authorized to receive service of process on behalf of such entity. In all other cases, this form must be signed by you personally or by a person authorized by you to acknowledge receipt of summons. If you return this form to the sender, service of a summons is deemed complete on the day you sign the acknowledgment of receipt below.

Date of mailing: October 2, 2025

Kevin E. Rayhill
(TYPE OR PRINT NAME)

*/s/ Kevin E. Rayhill*
(SIGNATURE OF SENDER—MUST NOT BE A PARTY IN THIS CASE)

## ACKNOWLEDGMENT OF RECEIPT

This acknowledges receipt of ***(to be completed by sender before mailing):***

1. [x] A copy of the summons and of the complaint.
2. [x] Other *(specify):*

   Civil Case Cover Sheet
   Notice of Case Management Conference

***(To be completed by recipient):***

Date this form is signed: ____________________

(TYPE OR PRINT YOUR NAME AND NAME OF ENTITY, IF ANY, ON WHOSE BEHALF THIS FORM IS SIGNED)

(SIGNATURE OF PERSON ACKNOWLEDGING RECEIPT, WITH TITLE IF ACKNOWLEDGMENT IS MADE ON BEHALF OF ANOTHER PERSON OR ENTITY)

HOLLAND & KNIGHT LLP
Ashley L. Shively (SBN 264912)
Mark Melodia (SBN 5059381)
Qian Shen (SBN 332048)
560 Mission Street, Suite 1900
San Francisco, CA 94105
Telephone: 415.743.6900
Fax: 415.743.6910
E-mail: ashley.shively@hklaw.com
mark.melodia@hklaw.com
qian.shen@hklaw.com

Attorneys for Defendant

Holland & Knight LLP
560 Mission Street, Suite 1900
San Francisco, CA 94105
Tel: 415.743.6900
Fax: 415.743.6910

**IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**IN AND FOR THE COUNTY OF ALAMEDA**

DANIEL WINE, ALLISON BLANK, SANDRA SION, and KEVIN SMITH, individually and on behalf of all others similarly situated,

*Plaintiffs,*

v.

WUNDERKIND CORP., a Delaware corporation,

*Defendants.*

*WINE, ET AL. V. WUNDERKIND CORP. ET AL. CLASS ACTION COMPLAINT*

Case No.: 25CV145737

# PROOF OF SERVICE

Complaint Filed: September 29, 2025
Trial Date: n/a

Holland & Knight LLP
560 Mission Street, Suite 1900
San Francisco, CA 94105
Tel: 415.743.6900
Fax: 415.743.6910

**PROOF OF SERVICE**

I, Bella Macapinlac, declare as follows:

I am employed in the City of San Francisco, State of California, I am over the age of eighteen years and am not a party to this action; my business address is 560 Mission Street, Suite 1900, San Francisco, CA 94105, in said County and State. On October 22, 2025, I served the following document:

- **NOTICE AND ACKNOWLEDGMENT OF RECEIPT**

on the parties stated below, by the following means of service:

**MOGIN LAW LLP**
Daniel J. Mogin (SBN No. 95624)
Timothy Z. LaComb (SBN No. 314244)
4225 Executive Square, Suite 600
La Jolla, CA 92037
Telephone: (619) 687-6611
Facsimile: (619) 687-6610
dmogin@moginlawllp.com
tlacomb@moginlawllp.com

**DON BIVENS PLLC**
Don Bivens (*pro hac vice* forthcoming)
15169 N. Scottsdale Road, Suite 205
Scottsdale, AZ 85254
Telephone: (602) 762-2661
don@donbivens.com

**JOSEPH SAVERI LAW FIRM, LLP**
Joseph R. Saveri (SBN 130064)
Cadio Zirpoli (SBN 179108)
Kevin E. Rayhill (SBN 267496)
Holden Benon (SBN 325847)
601 California Street, Suite 1505
San Francisco, CA 94108
Tel.: (415) 500-6800
jsaveri@saverilawfirm.com
czirpoli@saverilawfirm.com
hbenon@saverilawfirm.com
krayhill@saverilawfirm.com

*Counsel for Plaintiffs and the Proposed Class*

☐ **BY UNITED STATES MAIL**: I placed a true copy in a sealed envelope or package addressed to the persons as indicated above, on the above-mentioned date, and placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with this firm's practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited with the U.S. Postal Service in the ordinary course of business in a sealed envelope with postage fully prepaid. I am aware that on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing set forth in this declaration.

I am a resident or employed in the county where the mailing occurred. The envelope or package was placed in the mail at San Francisco, California.

☐ **BY MESSENGER SERVICE**: I placed a true copy in a sealed envelope or package addressed to the persons at the addresses listed above and providing them to a professional messenger service for service for delivery before 5:00 p.m. on the above-mentioned date. *(A declaration by the messenger must accompany this Proof of Service.)*

☐ **BY FAX TRANSMISSION**: Based on an agreement of the parties to accept service by fax transmission, I faxed the documents to the persons at the fax numbers listed above at _________________ [a.m./p.m.] , on June 25, 2020. The telephone number of the sending fax machine is [number] No error was reported by the fax machine that I used. A copy of the record of the fax transmission, which I printed out, is attached. This transmission report was properly issued by the sending fax machine.

☐ **BY OVERNIGHT DELIVERY**: On the above-mentioned date, I enclosed the documents in an envelope or package provided by an overnight delivery carrier and addressed to the persons at the addresses shown above. I placed the envelope or package for collection and overnight delivery at an office or a regularly utilized drop box of the overnight delivery carrier with delivery fees paid or provided for.

☐ **BY LEXISNEXIS**: I provided the document(s) listed above electronically to LexisNexis through the LexisNexis File & Serve website pursuant to the order authorizing electronic service and the instructions on that website.

☐ **BY ELECTRONIC TRANSFER TO THE CM/ECF SYSTEM**: On this date, I electronically uploaded a true and correct copy in Adobe "pdf" format the above-listed document(s) to the United States District Court's Case Management and Electronic Case Filing (CM/ECF) system. After the electronic filing of a document, service is deemed complete upon receipt of the Notice of Electronic Filing ("NEF") by the registered CM/ECF users.

☑ **BY ELECTRONIC SERVICE**: On the above-mentioned date, based on a court order or an agreement of the parties to accept service by electronic transmission, I caused the documents to be sent to the persons at the electronic notification addresses as shown above.

☑ **(STATE)** I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

☐ **(FEDERAL)** I declare under penalty of perjury that the foregoing is true and correct.

Executed on October 22, 2025.

Bella Macapinlac

Holland & Knight LLP
560 Mission Street, Suite 1900
San Francisco, CA 94105
Tel: 415.743.6900
Fax: 415.743.6910

**SUPERIOR COURT OF CALIFORNIA**
**COUNTY OF ALAMEDA**

**25CV145737: WINE, et al. vs WUNDERKIND CORP., A DELAWARE CORPORATION**
**10/30/2025 Complex Determination Hearing in Department 21**

Tentative Ruling - 10/29/2025 S. Raj Chatterjee

ORDER RE: COMPLIANCE

The Court has ordered the following after review of the case.

**COMPLEX DETERMINATION - GRANTED CLASS ACTION**

**COMPLEX DETERMINATION**

The Court designates this case as complex pursuant to Rule 3.400 et seq. of the California Rules of Court. Counsel are advised to be familiar with the Alameda County Local Rules concerning complex litigation, including Rule 3.250 et seq. An order assigning the case to a judge and an initial case management order will be issued.

**PROCEDURES**
Calendar information, filings, and tentative rulings are available to the public athttps://eportal.alameda.courts.ca.gov/. All counsel are expected to be familiar and to comply with pertinent provisions of the Code of Civil Procedure, the California Rules of Court, the Alameda County Superior Court Local Rules and the procedures outlined on the domain web page of the assigned department.

**SERVICE OF THIS ORDER**
Counsel for plaintiff(s) shall have a continuing obligation to serve a copy of this order on newly joined parties defendant not listed on the proof of service of this order and file proof of service. Each party defendant joining any third-party cross-defendant shall have a continuing duty to serve a copy of this order on newly joined cross-defendants and to file proof of service.

**Plaintiff must file a motion for class certification prior to the August 31, 2026 hearing.**

**The parties shall, no later than 15 calendar days before the next case management hearing, file a joint case management statement on pleading paper.**

**The Court finds that this deadline provides sufficient time for the parties to complete class discovery. See generally CRC 3.764(b). The parties are expected to diligently proceed with undertaking discovery necessary for determining class certification and to timely resolve any disputes that arise, including bringing any necessary motions, to meet this deadline**

**SUPERIOR COURT OF CALIFORNIA**
**COUNTY OF ALAMEDA**

**25CV145737: WINE, et al. vs WUNDERKIND CORP., A DELAWARE CORPORATION**
**10/30/2025 Complex Determination Hearing in Department 21**

Pursuant to Government Code Sections 70616(a) and 70616(b), a single complex fee of one thousand dollars ($1,000.00) must be paid on behalf of all plaintiffs. For defendants, a complex fee of one thousand dollars ($1,000.00) must be paid for each defendant, intervenor, respondent or adverse party, not to exceed, for each separate case number, a total of eighteen thousand dollars ($18,000.00), collected from all defendants, intervenors, respondents, or adverse parties. All such fees are ordered to be paid to Alameda Superior Court, within 10 days of service of this order.

All payments must identify on whose behalf the fee is submitted. Please submit payment to the attention of the Complex Litigation Clerk located in the Civil Division at the Rene C. Davidson Courthouse, 1225 Fallon Street, Oakland, CA 94612. Please make check(s) payable to the Clerk of the Superior Court. Documents may continue to be filed as allowed under Local Rule 1.9.

Judicial: Non-Appearance Case Review re: Deadline to File Class Certification Motion is scheduled for 08/31/2026 at 02:30 PM in Department 21 at Rene C. Davidson Courthouse.

The Court orders counsel to obtain a copy of this order from the eCourt portal.

PLEASE NOTE: This tentative ruling will become the ruling of the court if uncontested by 04:00pm the day before your hearing. If you wish to contest the tentative ruling, then both notify opposing counsel directly and the court at the eCourt portal found on the court's website: www.alameda.courts.ca.gov.

If you have contested the tentative ruling or your tentative ruling reads, "parties to appear," please use the following link to access your hearing at the appropriate date and time: https://alamedacourts-ca-gov.zoomgov.com/my/department21 . If no party has contested the tentative ruling, then no appearance is necessary.

| SUPERIOR COURT OF CALIFORNIA COUNTY OF ALAMEDA | Reserved for Clerk's File Stamp |
|---|---|
| COURTHOUSE ADDRESS:<br>Rene C. Davidson Courthouse<br>Administration Building, 1221 Oak Street, Oakland, CA 94612 | FILED<br>Superior Court of California<br>County of Alameda<br>11/07/2025<br>Chad Finke, Executive Officer / Clerk of the Court<br>By: [signature] Deputy<br>G. Constantino |
| PLAINTIFF(S) / PETI<br>Daniel Wine et al | |
| Wunderkind Corp., a Delaware Corporation | |
| **NOTICE OF CASE REASSIGNMENT** | CASE NUMBER:<br>25CV145737 |

**EFFECTIVE** 11/07/2025

**THIS FORM IS TO BE SERVED WITH THE SUMMONS AND COMPLAINT**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

Pursuant to Rule 3.734 of the California Rules of Court and Title 3 Chapter 2 of the Local Rules of the Superior Court of California, County of Alameda, this action is hereby assigned by the Presiding Judge for all purposes to:

ASSIGNED JUDGE: Patrick McKinney
DEPARTMENT: 18
LOCATION: Rene C. Davidson Courthouse
Administration Building, 1221 Oak Street, Oakland, CA 94612
PHONE NUMBER: (510) 267-6934
FAX NUMBER:
EMAIL ADDRESS: Dept18@alameda.courts.ca.gov

Under direct calendaring, this case is assigned to a single judge for all purposes including trial.

Please note: In this case, any challenge pursuant to Code of Civil Procedures section 170.6 must be exercised within the time period by law. (See Code of Civ. Proc. §§ 170.6, subd. (a.)(2) and 1013)

NOTICE OF NONAVAILABILITY OF COURT REPORTERS: Effective June 4, 2012, the court will not provide a court reporter for civil law and motion hearings, any other hearing or trial in civil departments, or any afternoon hearing in Department 201 (probate). Parties may arrange and pay for the attendance of a certified shorthand reporter. In limited jurisdiction cases, parties may request electronic recording. Amended Local Rule 3.95 states: "Except as otherwise required by law, in general civil case and probate departments, the services of an official court reporter are not normally available. For civil trials, each party must serve and file a statement before the trial date indicating whether the party requests the presence of an official court reporter."

GENERAL PROCEDURES

Following assignment of a civil case to a specific department, all pleadings, papers, forms, documents and writings can be submitted for filing at either Civil Clerk's Office, located at the Rene C. Davidson Courthouse, Room 109, 1225 Fallon Street, Oakland, California, 94612, and the Hayward Hall of Justice, 24405 Amador Street, Hayward, California, 94544 and through Civil e-filing. Information regarding Civil e-filing can be found on the courts website. All documents, with the exception of the original summons and the original civil complaint, shall have clearly typed on the face page of each document, under the case number, the following:

**ASSIGNED FOR ALL PURPOSES TO**
**JUDGE** Patrick McKinney
**DEPARTMENT** 18

All parties are expected to know and comply with the Local Rules of this Court, which are available on the court's website at http://www.alameda.courts.ca.gov/Pages.aspx/Local-Rules(1) and with the California Rules of Court, which are available at www.courtinfo.ca.gov.

Parties must meet and confer to discuss the effective use of mediation or other alternative dispute processed (ADR) prior to the Initial Case Management Conference. The court encourages parties to file a "Stipulation to Attend ADR and Delay Initial Case Management Conference for 90 Days." The court's website contains this form and other ADR information. If the parties do not stipulate to attend ADR, the parties must be prepared to discuss referral to ADR at the Initial Case Management Conference.

COURT RESERVATIONS

The use of the Court Reservation System (CRS) is now mandated in many civil courtrooms within the Alameda County Superior Court. Instead of calling or emailing the courtroom to make a reservation, parties with a case assigned to a courtroom using CRS are directed to utilize CRS to make and manage their own reservations, within parameters set by the courtrooms. CRS is available 24 hours a day, seven days a week and reservations can be made from a computer or smart phone. Please note, you are prohibited from reserving more than one hearing date for the same motion.

Prior to scheduling any motion on CRS, including any Applications for Orders for Appearance and Examination, or continuing any motion, please review the online information (if any) for the courtroom in which you are reserving. There may be specific and important conditions associated with certain motions and proceedings. Information is available on the court's eCourt Public Portal at www.eportal.alameda.courts.ca.gov.

Chad Finke, Executive Officer / Clerk of the Court

By

G. Constantino, Deputy Clerk

**NOTICE OF CASE REASSIGNMENT**

| SUPERIOR COURT OF CALIFORNIA<br>COUNTY OF ALAMEDA | Reserved for Clerk's File Stamp |
|---|---|
| COURTHOUSE ADDRESS:<br>Rene C. Davidson Courthouse<br>1225 Fallon Street, Oakland, CA 94612 | **FILED**<br>Superior Court of California<br>County of Alameda<br>11/07/2025<br>Chad Finke, Executive Officer/Clerk of the Court<br>By: G. Constantino Deputy<br>G. Constantino |
| PLAINTIFF/PETITIONER:<br>Daniel Wine et al | |
| DEFENDANT/RESPONDENT:<br>Wunderkind Corp., a Delaware Corporation | |
| **CERTIFICATE OF ELECTRONIC SERVICE CODE OF CIVIL PROCEDURE 1010.6** | CASE NUMBER:<br>25CV145737 |

**I, the below named Executive Officer/Clerk of Court of the above-entitled court, do hereby certify that I am not a party to the cause herein, and that on this date I served one copy of the Notice of Case Reassignment (Civil) entered herein upon each party or counsel of record in the above entitled action, by electronically serving the document(s) from my place of business, in accordance with standard court practices.**

Joseph Saveri
Joseph Saveri Law Firm, LLP
jsaveri@saverilawfirm.com

Chad Finke, Executive Officer / Clerk of the Court

Dated: 11/07/2025

By: G. Constantino

G. Constantino, Deputy Clerk